UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| JAMES WILSON McMEANS, JR. ) | CASE NO. 18-82525-CRJ12 |
| ) | CHAPTER 12 |
| DEBTOR. ) | |
| ) | |
| ) | |
| MONSANTO COMPANY, ) | |
| ) | Adv. No.: _____ |
| Plaintiff. ) | |
| ) | |
| vs. ) | |
| ) | |
| JAMES WILSON McMEANS, JR., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBTS**

COMES NOW Plaintiff Monsanto Company ("Monsanto") and, for its *Complaint to Determine Nondischargeability of Debts* against Debtor James Wilson McMeans, Jr. ("Defendant"), states the following:

**I. PARTIES, JURISDICTION AND VENUE**

1. Defendant is a Chapter 12 debtor in the above-referenced bankruptcy proceedings which were voluntarily commenced on August 24, 2018 (the "Petition Date"), and Defendant is engaged in a farming operation that involves the planting of crops, including soybeans.

2. Monsanto is a company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri. Monsanto is a creditor and party-in-interest in Defendant's bankruptcy case.

3. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), 28 U.S.C. § 157(b)(1), (b)(2)(A), (B) and (I), 11 U.S.C. § 523(a)(6), Bankruptcy Rule 7001(6).

4. This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (I). Monsanto consents to entry of judgment in this matter by this Court.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## II. PATENTS-IN-SUIT

6. United States Patent Number 6,949,696 ("the '696 patent"), a true and correct copy of which is attached hereto as Exhibit "A", was issued on September 27, 2005.

7. United States Patent Number 8,987,434 ("the '434 patent"), a true and correct copy of which is attached hereto as Exhibit "B", was issued on March 24, 2015.

8. United States Patent Number 7,064,729 ("the '729 patent"), a true and correct copy of which is attached hereto as Exhibit "C". The '729 patent was issued on September 27, 2005.

9. Monsanto Technology, LLC is and has been the owner of the '696, '434, and '729 patents for all times relevant to the events giving rise to this action.

10. Monsanto Company is and has been the exclusive licensee of the '696, '434, and '729 patents from Monsanto Technology, LLC.

## III. BACKGROUND OF MONSANTO'S BIOTECHNOLOGIES

11. This case concerns revolutionary biotechnologies -- Roundup Ready 2 Yield® and Roundup Ready 2 Xtend® soybeans. These patented technologies enable soybeans (and other crops) to tolerate glyphosate, or tolerate glyphosate and dicamba, widely used agricultural

herbicides. Glyphosate and dicamba are highly effective at eliminating most weeds and are valued for their environmental benefits, including their relative lack of toxicity and their ability to bind to soil and break down quickly. Glyphosate and dicamba-based herbicides are non-selective, meaning that they cause damage to conventional crop and non-crop plants (i.e., plants that have not been genetically modified to tolerate the herbicides).

12. Monsanto invested decades of research and hundreds of millions of dollars developing these biotechnologies to help farmers control weeds, avoid pest damage, and increase crop yields. As reflected by farmers' overwhelming adoption, these technologies offer farmers significant economic, safety, and environmental benefits. The technologies have decreased production costs for crops and they have led to a significant reduction in the amount of management time needed to grow crops, in part because they greatly simplified the treatment of weeds.

13. The technologies have made weed control safer. Before the introduction of Roundup Ready® seeds, farmers often had to apply three or more different herbicides to achieve the same control of weeds that has been achieved using Roundup Ready® seeds together with glyphosate as the sole herbicide and Roundup Ready® 2 Yield was developed to increase crop resistance to glyphosate. Equally valuable in the marketplace is the next generation of Monsanto technology Xtend® which is used with glyphosate herbicide in combination with dicamba herbicide in order to combat weeds which may be resistant to one or more herbicides. Finally, the technologies have had other significant environmental benefits. Roundup Ready® 2 Yield and Xtend® technologies enable farmers to reduce tillage of the soil with heavy equipment, decreasing erosion and soil loss.

14. To commercialize its inventions, and protect its valuable intellectual property rights, Monsanto licenses its technology to competitors and to individual farmers. Farmers wishing to lawfully use the patented technology agree to abide by the terms of a license agreement (a "Technology Agreement") that provides the farmer/licensee with the permission to use the valuable technology. The Technology Agreement provides the licensed farmer, and only the licensed farmer, with the right to use the patented technology to grow a single commercial crop, the seeds of which will also contain the patented technology. Farmers may not save seed containing the patented technology from harvested crops for replanting on their own fields, nor may they save seed to sell or transfer to other farmers for replanting. A farmer who wishes to grow crops from seeds containing Monsanto's technology must obtain the seed from an authorized dealer each planting season.

A. **Herbicides and Resistance Biotechnologies**

15. Roundup® is a non-selective herbicide manufactured by Monsanto, which causes injury to plant varieties, including soybean varieties, that do not contain the patented Roundup Ready 2 Yield® or Roundup Ready 2 Xtend® technologies. Soybeans display unique and identifiable symptomology after having been sprayed with Roundup® or other herbicides containing glyphosate, unless said soybeans contain the patented Roundup Ready 2 Yield® or Roundup Ready 2 Xtend® technology.

16. XtendiMax® With VaporGrip® technology is a dicamba-based herbicide manufactured by Monsanto, which causes injury to plant varieties, including soybean varieties, that do not contain the patented Roundup Ready 2 Xtend® technology. Soybeans display unique and identifiable symptomology after having been sprayed with XtendiMax® With VaporGrip®

or other herbicides containing dicamba, unless said soybeans contain the Roundup Ready 2 Xtend® technology.

### B. Biotechnology Licensing

17. Monsanto licenses the use of Roundup Ready 2 Yield® and Roundup Ready 2 Xtend® seed technologies only to farmers at the retail marketing level through a limited use license commonly referred to as a "Technology Agreement."

18. Farmers are not authorized to use Monsanto's patented seed technologies unless they sign a Technology Agreement.

19. Among others things, the express terms of the Technology Agreement prohibit licensees from saving harvested seed containing the patented traits for planting purposes, or from selling, transferring or supplying saved seed to others for planting; that is, the use of the licensed seed is limited to the production of a single commercial crop.

### C. Biotechnology Marketing and Branding

20. Monsanto Company is in the business of developing, manufacturing, licensing, and selling agricultural biotechnology, agricultural chemicals, and agricultural products. After the investment of substantial time, expertise, and expense, Monsanto Company developed biotechnology that results in plants having: resistance to glyphosate-based (such as Roundup Ultra®, Roundup UltraMAX®, Roundup WeatherMAX®, and Touchdown®) herbicides or dual resistance to both glyphosate-based and dicamba-based (such as XtendiMax® With VaporGrip® Technology) herbicides.

21. Soybean seeds containing these biotechnologies are marketed by Monsanto under multiple trade names, including Roundup Ready 2 Yield® and Roundup Ready 2 Xtend®.

### D. Biotechnology Patent Protection

22. Monsanto's Roundup Ready 2 Yield® biotechnology is protected by multiple United States patents, including the '696 patent and '434 Patents. The '696 patent was issued on September 27, 2005, prior to the events giving rise to this action. The '434 patent was issued on March 24, 2015, prior to the events giving rise to this action.

23. Monsanto's Roundup Ready 2 Xtend® biotechnology is protected by multiple United States patents, including the '696, '434 patent, and '729 Patents. The '696 patent was issued on September 27, 2005, prior to the events giving rise to this action. The '434 patent was issued on March 24, 2015, prior to the events giving rise to this action. The '729 patent was issued on September 27, 2005 prior to the events giving rise to this action.

### E. Product Labeling

24. Monsanto places, on the labeling of all bags containing Monsanto's Roundup Ready 2 Yield® seed, the required statutory notice that its Roundup Ready 2 Yield® technology is patented.

25. Monsanto places, on the labeling of all bags containing Roundup Ready 2 Xtend® seed, the required statutory notice that its Roundup Ready 2 Xtend® technology is patented.

### F. Unauthorized Activities under Licensing Agreement

26. Monsanto does not authorize (and specifically prohibits under the language of the Technology Agreement) the planting of saved Roundup Ready 2 Yield® seed. For those farmers that have signed a Technology Agreement, the planting of saved Roundup Ready 2 Yield® seed can be both a breach of contract and a direct or indirect infringement of Monsanto's patent rights, including the '696 and '434 patents.

27. Monsanto does not authorize (and specifically prohibits under the language of the Technology Agreement) the planting of saved Roundup Ready 2 Xtend® seed. For those farmers that have signed a Technology Agreement, the planting of saved Roundup Ready 2 Xtend® seed can be both a breach of contract and a direct or indirect infringement of Monsanto's patent rights, including the '696, '434, and '729 patents.

28. Monsanto does not authorize (and specifically prohibits under the language of the Technology Agreement) the transfer of saved Roundup Ready 2 Yield® seed. For those farmers that have signed a Technology Agreement, the transferring of saved Roundup Ready 2 Yield® seed can be both a breach of contract and a direct or indirect infringement of Monsanto's patent rights, including the '696 and '434 patents.

29. Monsanto does not authorize (and specifically prohibits under the language of the Technology Agreement) the transfer of saved Roundup Ready 2 Xtend® seed. For those farmers that have signed a Technology Agreement, the transferring of saved Roundup Ready 2 Xtend® seed can be both a breach of contract and a direct or indirect infringement of Monsanto's patent rights, including the '696, '434, and '729 patents.

## IV. **DEFENDANT'S CONDUCT**

30. In 2018, Defendant cleaned soybeans containing Monsanto's patented Roundup Ready 2 Xtend technology to prepare seed harvested from a prior harvest for planting. The cleaning process removes partial seeds and harvest debris such as leaf and stem parts. Legitimately purchased seed does not need to be cleaned by a grower prior to planting. It is already free of the debris and partial seeds when the grower purchases it from a retailer.

31. To conceal his activities, Defendant placed the cleaned seed into hard sided containers used by seed dealers/manufacturers. Those hard sided containers were then transported to the field and the saved, cleaned seed was used to plant Defendant's soybean crop.

32. That crop was subsequently sprayed with one or more herbicides to kill weeds and without injury to the soybean crop.

33. Defendant was interviewed about his use of saved soybeans and admitted to planting at least 603 units (or commercial bags) of saved Roundup Ready 2 Xtend ("RR2X") soybeans in 2018 and 120 units of saved Roundup Ready 2 Yield ("RR2Y") soybeans in 2017.

34. Defendant authorized samples to be taken from his fields. Each sample tested positive for Monsanto's patented RR2X trait, and Defendant had not purchased any seed containing the RR2X trait.

35. Defendant admitted unauthorized use of at least 603 units of saved RR2X soybeans in 2018 and at least 120 units of saved RR2Y soybeans in 2017.

36. Thereafter, Defendant disclosed his bankruptcy, in which Monsanto was not listed as a creditor, and conversations regarding resolution were terminated.

## V. COUNTS

### COUNT I

**PATENT INFRINGEMENT-Patent No. 6,949,696 under 35 U.S.C. § 271**

37. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

38. On September 27, 2005, United States Patent Number 6,949,696 was duly and legally issued to Monsanto. The '696 patent is for an invention of Chimeric Figwort Mosaic

Virus-Elongation Factor 1 α Promoters and Methods of Using Them. This invention is in the fields of genetic engineering and plant biology.

39. Monsanto is the owner by assignment of all rights, title and interest in and to the '696 Patent.

40. Defendant directly and/or indirectly infringed the '696 patent by making, using, offering to sell, selling or importing seed having the Roundup Ready 2 Yield® or Roundup Ready 2 Xtend® trait embodying or using the patented invention without authorization from Monsanto. Defendant will continue this unlawful illegal activity unless enjoined by this Court.

41. Defendant's infringing activities were conducted with full knowledge Monsanto's patents and Defendant knew that the actions infringed Monsanto's patent rights.

42. Defendant's infringing activity constituted a willful and malicious injury to Monsanto and Monsanto's patent rights. Defendant knew that his infringing activity would cause such injury to Monsanto and Monsanto's patent rights.

43. Defendant's actions have damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

44. Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

45. Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, on information and belief, damages

should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

46. The infringing activity of the Defendant brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285. Thus, Monsanto requests the award of reasonable attorneys' fees and costs.

## COUNT II

### PATENT INFRINGEMENT-Patent No. 8,987,434 under 35 U.S.C. § 271

47. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

48. On March 24, 2015, the '434 Patent was duly and legally issued to Monsanto for an invention in Hybrid Caulimovirus Promoters and Constructs Thereof.

49. Monsanto is the owner by assignment of all rights, title and interest in and to the '434 Patent.

50. Defendant directly and/or indirectly infringed the '434 Patent by making, using, offering to sell, selling or importing seed having the Roundup Ready 2 Yield® or Roundup Ready 2 Xtend® trait embodying the patented invention without authorization from Monsanto, and will continue to do so unless enjoined by this Court.

51. Defendant's infringing activities were conducted with full knowledge Monsanto's patents and Defendant knew that the actions infringed Monsanto's patent rights.

52. Defendant's infringing activity constituted a willful and malicious injury to Monsanto and Monsanto's patent rights. Defendant knew that his infringing activity would cause such injury to Monsanto and Monsanto's patent rights.

53. Defendant's actions damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

54. Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

55. Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

56. Defendant's infringing activity brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285, and thus Monsanto requests the award of reasonable attorneys' fees and costs.

## COUNT III

### PATENT INFRINGEMENT-Patent No. 7,838,729 under 35 U.S.C. § 271

57. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

58. On September 27, 2005, the '729 Patent was duly and legally issued to Monsanto Company for an invention in Chimeric figwort mosaic virus-elongation factor 1 α promoters and methods of using them.

59. Monsanto is the owner by assignment of all rights, title and interest in and to the '729 Patent.

60. Defendant directly and/or indirectly infringed the '729 Patent by making, using, offering to sell, selling or importing seed having the Roundup Ready 2 Xtend® trait embodying the patented invention without authorization from Monsanto, and will continue to do so unless enjoined by this Court.

61. Defendant's infringing activities were conducted with full knowledge Monsanto's patents and Defendant knew that the actions infringed Monsanto's patent rights.

62. Defendant's infringing activity constituted a willful and malicious injury to Monsanto and Monsanto's patent rights. Defendant knew that his infringing activity would cause such injury to Monsanto and Monsanto's patent rights.

63. Defendant's actions damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

64. Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

65. Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

66. Defendant's infringing activity brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285, and thus Monsanto requests the award of reasonable attorneys' fees and costs.

## COUNT IV

### CONVERSION

67. Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

68. By obtaining, cleaning, and planting soybean seed containing the Roundup Ready 2 Yield® and Roundup Ready 2 Xtend® traits without authority, Defendant intentionally and wrongfully exercised dominion, ownership and control over and converted to his own use Monsanto's patented seed technologies which were the property of Monsanto under the terms of the '696 Patent, the '434 Patent, and the '729 Patent and which are only legitimately available to third parties through a license agreement with Monsanto.

69. As a result, Monsanto is entitled, at a minimum, to damages equal to the value of the Roundup Ready 2 Yield® and Roundup Ready 2 Xtend® seed at the time of the conversion; which is an amount equal to the applicable reasonable royalty and the purchase price which Defendant would otherwise have been required to pay.

70. Defendant's conversion of Monsanto's property rights was malicious and willful, entitling Monsanto to punitive damages.

## COUNT V

### NON-DISCHARGEABILITY under 11 U.S.C. § 523(a)(6)

71. Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

72. Defendant took Monsanto's patented seed technology with the intent to convert the property to his use without the consent of Monsanto.

73. At the time Defendant took Monsanto's patented seed technology, Defendant did so with knowledge of Monsanto's patent rights and knew he needed to get the permission of Monsanto to use Monsanto's patented seed technology.

74. Defendant's actions were taken with the deliberate intent to injure Monsanto by depriving Monsanto of its reasonable royalty.

75. Defendant's actions of patent infringement and conversion of Monsanto's patented seed technology are wrongful.

76. There is no just cause or excuse for Defendant intentionally infringing Monsanto's patents and converting Monsanto's patented seed technology.

77. The obligations owing by Defendant to Monsanto for Defendant's violation of Monsanto's rights in the Patents represent a debt owing by Defendant for willful and malicious injury to Monsanto and Monsanto's property.

78. Accordingly, the amounts owing by Defendant are nondischargeable under 11 U.S.C. § 523(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Monsanto Company prays that this Honorable Court enter judgment in favor of Monsanto Company and against Debtor James Wilson McMeans, Jr.:

A. On Counts I – III, entering judgment that the Defendant are infringing and have directly and/or indirectly infringed the '696, '434, and '729 patents, and that such infringement has been unlawful, willful and deliberate;

B. On Count IV, entering judgment against the Defendant for conversion of Monsanto's patented technology;

C. On Counts I, II, and IV, awarding Monsanto Company at least $18,000.00 for James Wilson McMeans, Jr.'s patent infringement and for conversion of Monsanto's Roundup Ready 2 Yield® patented technology;

D. On Counts I - IV, awarding Monsanto Company at least $128,600.00 for James Wilson McMeans, Jr.'s patent infringement and for conversion of Monsanto's Roundup Ready 2 Xtend® patented technology;

E. On Counts I - III, awarding Monsanto Company at least $277,200.00 as enhanced damages pursuant to 35 U.S.C. § 284 for James Wilson McMeans, Jr.'s patent infringement;

F. On Counts I - III, awarding Monsanto Company its attorneys' fees and costs in this suit pursuant to 35 U.S.C. § 285 for James Wilson McMeans, Jr.'s patent infringement;

G. On Counts I – III, entering a permanent injunction pursuant to 35 U.S.C. § 283 against the Defendant to prevent him from making, using, saving, cleaning, delinting, planting, selling, offering to sell, importing, or otherwise transferring, any of Monsanto's proprietary technologies, without express, written permission from Monsanto's undersigned counsel prior to Defendant obtaining any license from an authorized dealer;

H. On Count V, entering judgment determining and declaring that the debt for obligations owed by James Wilson McMeans, Jr. to Monsanto for Defendant's patent infringement and conversion of Monsanto's patented technology are nondischargeable pursuant to 11 U.S.C. § 523(a)(6); and

I. Granting such other and further relief as the Court deems just and appropriate.

Respectfully submitted this the 27th day of December, 2018.

                                                */s/ Brian W. Hockett*
                                                Brian W. Hockett
                                                Attorneys for Monsanto Company

Mark P. Williams
NORMAN, WOOD, KENDRICK AND TURNER
Ridge Park Place, Suite 3000
1130 22nd Street South
Birmingham, AL 35205
(205) 328-6643

Brian W. Hockett
(Admitted Pro Hac Vice)
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6461
bhockett@thompsoncoburn.com